**JACKSON WALKER L.L.P.**
Kenneth Stohner, Jr.
State Bar No. 19263700
901 Main Street, Suite 6000
Dallas, TX 75202
(214) 953-6000 (Telephone)
(214) 953-5822 (Facsimile)

*COUNSEL FOR ROBERT MILBANK, JR., CHAPTER 7 TRUSTEE*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELCOTEQ, INC., | § | **Case No. 11-37348-BJH-7** |
| ELCOTEQ, INC., | § | **Case No. 11-36837-SGJ-7** |
| | § | **Substantively Consolidated Under** |
| AND | § | **Case No. 11-37348-BJH-7** |
| | § | |
| ELCOTEQ HOLDING, INC., | § | **Case No. 11-36838-SGJ-7** |
| | § | **Jointly Administered under** |
| Debtors. | § | **Case No. 11-37348-BJH-7** |

## THIRD INTERIM FEE APPLICATION COVER SHEET

Name of Applicant:                                     Jackson Walker L.L.P.

Authorized to Provide
Professional Services to:                 Robert Milbank, Jr., Chapter 7 Trustee

Date of Retention:                 Employment effective as of November 9, 2011

Period for which Compensation
and Reimbursement is sought:      November 1, 2013 through September 30, 2014

Total Professional Service Fees sought
as actual, reasonable, and necessary:                   $ 486,381.00

Total of Expense Reimbursement sought
as actual, reasonable, and necessary:                    $ 19,817.29

Total Professional Fees & Expenses sought:          $ 506,198.29

Retainer Received:                                          N/A

Amount Previously Paid                          $ 514,316.92

11424245v.1

Hourly Rates:  Attorney

    Highest Rate:                             $625.00
    Hours Billed:                              905.80
    Average:                                  $584.27

Hourly Rates:  Paralegal

    Highest Rate:                             $230.00
    Hours Billed:                              111.4
    Average:                                  $218.25

This is an:      <u>  X  </u>   Interim     <u>       </u>   Final application.

**JACKSON WALKER L.L.P.**
Kenneth Stohner, Jr.
State Bar No. 19263700
901 Main Street, Suite 6000
Dallas, TX 75202
(214) 953-6000 (Telephone)
(214) 953-5822 (Facsimile)

*COUNSEL FOR ROBERT MILBANK, JR., CHAPTER 7 TRUSTEE*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ELCOTEQ, INC.,** | § | **Case No. 11-37348-BJH-7** |
| **ELCOTEQ, INC.,** | § | **Case No. 11-36837-SGJ-7** |
| | § | **Substantively Consolidated Under** |
| **AND** | § | **Case No. 11-37348-BJH-7** |
| | § | |
| **ELCOTEQ HOLDING, INC.,** | § | **Case No. 11-36838-SGJ-7** |
| | § | **Jointly Administered under** |
| Debtors. | § | **Case No. 11-37348-BJH-7** |

## THIRD INTERIM APPLICATION OF JACKSON WALKER L.L.P. FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS SPECIAL COUNSEL FOR ROBERT MILBANK, JR., CHAPTER 7 TRUSTEE, NOVEMBER 1, 2012 THROUGH OCTOBER 31, 2013

TO THE HONORABLE BARBARA J. HOUSER, U.S. BANKRUPTCY JUDGE:

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, 1100 COMMERCE STREET, ROOM 14A7, DALLAS, TX, 75242-1496, BEFORE 11:00 A.M. ON DECEMBER 1, 2014, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY AS FOLLOWS: KENNETH STOHNER, JR., JACKSON WALKER, L.L.P., 901 MAIN STREET, SUITE 6000, DALLAS, TX 75202. ANY RESPONSE MUST BE FILED AND SERVED PRIOR TO 11:00 A.M. ON DECEMBER 1, 2014.**

11424245v.1

**IF NO RESPONSE IS TIMELY FILED, THE RELIEF REQUESTED HEREIN SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

**A HEARING TO APPROVE THE MOTION WILL BE HELD ON MONDAY, DECEMBER 1, 2014, AT 1:15 P.M., BEFORE THE HONORABLE BARBARA J. HOUSER AT THE UNITED STATES BANKRUPTCY COURT LOCATED AT 1100 COMMERCE STREET, DALLAS, TEXAS 75242.**

Jackson Walker, LLP ("JW"), special counsel to Robert Milbank, Jr., Chapter 7 Trustee (the "Trustee") in the above-referenced bankruptcy cases, submits this *Third Interim Application of Jackson Walker L.L.P. for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Expenses Incurred as Special Counsel for Robert Milbank, Jr., Chapter 7 Trustee* (the "Third Fee Application"), and requests that the Court enter an order pursuant to 11 U.S.C. §§ 330(a) and 331 and Federal Rule of Bankruptcy Procedure 2016 allowing and awarding compensation for the period commencing November 1, 2013, through and including September 30, 2014 (the "Application Period"), in the amount of $486,381.00 and for reimbursement of JW's actual and necessary expenses incurred during the Application Period in the amount of $19,817.29 for total compensation in the aggregate amount of $506,198.29.

In further support hereof, JW respectfully states to the Court as follows:

## I.
## BACKGROUND OF CASE

1.      On August 31, 2011 (the "Petition Date"), certain creditors of Elcoteq, Inc. ("Elcoteq") filed an involuntary chapter 11 petition in the United States Bankruptcy Court for the Western District of Texas, El Paso Division, Case No. 11-31675.  An order for relief was entered in such case on November 4, 2011, and the case was converted to chapter 7 proceeding on November 16, 2011.  Also on November 16, 2011, an Agreed Order Transferring Case was

entered transferring the Elcoteq cases to the Northern District of Texas, Dallas Division, where it is currently pending under Case No. 11-37348.

2.      On October 27, 2011, Elcoteq and Elcoteq Holding, Inc. ("EHI"), an affiliate of Elcoteq, while the involuntary petition was pending, filed voluntary chapter 7 petitions in the United States Bankruptcy court for the Northern District of Texas, Dallas Division, Case Nos. 11-36837 and 11-36838 respectively.  Robert Milbank, Jr. was appointed as the chapter 7 trustee charged with administering the Debtor's bankruptcy estate in all three pending cases.

3.      Robert Milbank, Jr. was appointed as Chapter 7 Trustee.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. §§ 330(a) and 331.

## I.
## JW'S RETENTION

5.      On or about December 2, 2012, the Trustee filed an *Application for Authority to Employ Jackson Walker L.L.P. as Special Counsel for the Trustee* (the "JW Employment Application") [Docket No. 17].  JW's employment was subsequently approved pursuant to that certain *Order Granting Application for Authority to Employ Jackson Walker L.L.P. as Special Counsel for the Trustee* entered by the Court on March 16, 2012 [Docket No. 80] (the "JW Retention Order").

6.      Pursuant to the JW Employment Application, JW is to be compensated and reimbursed pursuant to its normal hourly rates and disbursement policies in effect from time to time for services performed and disbursements made on behalf of its clients.

11424245v.1

7.      On November 21, 2012, JW filed its *First Application of Jackson Walker L.L.P. for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Expenses Incurred as Special Counsel for Robert Milbank, Jr., Chapter 7 Trustee for the Period November 9, 2011 through October 31, 2012* [Docket No. 130] ("First Fee Application").  In its December 20, 2013 *Order Granting First Interim Application of Jackson Walker, LLP for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Expenses Incurred as Special Counsel for Robert Milbank, Jr., Chapter 7 Trustee for the Period November 9, 2011 Through October 31, 2012* [Docket No. 147], the Court approved fees in the amount of $327,541.65 and expenses in the amount of $23,941.40 for a total of $351,483.05 and reserved for future evaluation on a subsequent interim or final fee application the fee amount of $36,393.65.

8.      On November 20, 2013, JW filed its *Second Interim Application of Jackson Walker L.L.P. for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Expenses Incurred as Special Counsel for Robert Milbank, Jr., Chapter 7 Trustee, November 1, 2012 through October 31, 2013* [Docket No. 191].  In its December 19, 2013 *Order Granting Second Interim Application of Jackson Walker, LLP for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Expenses Incurred as Special Counsel for Robert Milbank, Jr., Chapter 7 Trustee for the Period November 1, 2012 through October 31, 2013* [Docket No. 209].   The Court approved fees in the amount of $174,821.00, expenses in the amount of $7,437.37 and the prior holdback of $36,393.65 for a total of $218,652.02 and reserving for future evaluation on a subsequent interim or final application the amount of $19,424,50.   To date, JW has been paid $482,938.00 in fees and $31,378.77 in reimbursement for expenses.

11424245v.1

## II.
## OVERVIEW

9.      This Third Fee Application has been prepared in accordance with, and pursuant

to, (a) 11 U.S.C. §§ 330(a) and 331, (b) Federal Rule of Bankruptcy Procedure 2016, and (c)

Local Rule 2016 regarding the compensation of professionals.

10.      There is no agreement or understanding between JW and any other person, other

than members of the firm, for the sharing of compensation to be received for services rendered in

this case.

## III.
## TIME AND EXPENSE RECORDS

11.      Attached hereto as <u>Exhibit "A"</u> and incorporated herein by reference are copies of

contemporaneously-maintained  detailed  time  entries  for  all  services  performed  for  each

individual providing services during the Application Period organized by task.  All time records

have  been  kept  in  tenth  of  an  hour  increments.  Also  attached  hereto  as  <u>Exhibit  "B"</u>  and

incorporated herein by reference is a chart summarizing JW' s fees separated by task category.

12.      Attached hereto as <u>Exhibit "C"</u> and incorporated herein by reference is a schedule

summarizing the categories of expenses for which JW is seeking reimbursement and the total

amount for each such expense category.

13.      Attached hereto as <u>Exhibit "D"</u> and incorporated herein by reference is a schedule

of  fees  incurred  by  attorney.  To  the  extent  that  time  or  disbursement  charges  for  services

rendered or disbursements incurred relate to the Application Period, but were not processed prior

to  the  preparation  of  this  Third  Fee  Application,  JW  reserves  the  right  to  request  additional

compensation for such services and reimbursement of such expenses in a future application.

11424245v.1

**IV.**
**DESCRIPTION OF SERVICES**

14.    Details of the various services that JW attorneys and paraprofessionals have rendered are set forth in Exhibit "A."  A brief summary of the more significant services rendered by JW by activity category is set forth below.  As special counsel, the primary role of JW during the Application Period has been to provide legal services in connection with the investigation and collection of accounts receivables.  In addition, JW provided assistance to the Trustee and his counsel, Cavazos, Hendricks, Poirot & Smitham, P.C. ("CHPS"), in the filing and pursuit of an adversary proceeding against Philips Lighting Electronics North America, a division of Philips Electronics North America Corporation, and Philips Electronics North America Corporation.  JW also was substituted as counsel in a preference adversary proceeding filed by CHPS against Suzhou TPV Technology Co. Ltd. d/b/a TPV Technology (Suzhou) Co. Ltd., TPV Technology Limited and Top Victory Investments Limited.  The substitution was made because JW was representing the Trustee in an adversary proceeding seeking  the collection of accounts receivable against TPV Technology Limited, Trend Smart America, Ltd. and Top Victory Investments Limited.  A chart summarizing the total fees in each category is provided in Exhibit "B" attached hereto.

**A.**    **Collection of Elcoteq Accounts Receivable**

15.    The predominant time spent by JW during this Application Period was the pursuit of accounts receivable ("Elcoteq Accounts") on behalf of the Trustee.   During the First Application Period, JW assisted the Trustee in negotiating an agreement with Danske Bank A/S ("Danske") regarding the collection of the Elcoteq Accounts by the Trustee, a resolution of the secured claim of Danske against the Elcoteq Accounts, an allocation of amounts collected by the Trustee on the Elcoteq Accounts, and a release of claims against Danske.  A Settlement

Agreement ("<u>Danske Settlement</u>") between the Trustee and Danske was approved by the Court on August 10, 2012.

16.     Pursuant to the Danske Settlement, the Trustee is entitled to collect all Elcoteq Accounts with the requirement to seek approval of the Bankruptcy Court of any settlements.  All fees and expenses incurred by the Trustee's professionals regarding the collection of the Elcoteq Accounts will be deducted from the total amount collected prior to the division of such collected amounts between Danske and the Trustee.  After deducting such fees and expenses from the gross collections, the remaining net collections is divided 10% to the estate of Elcoteq and 90% to Danske.

17.     Prior to the filing of the involuntary petitions, Elcoteq had ceased operations at both the Juarez and Monterrey facilities in Mexico.  The labor unions at the two facilities asserted significant wage claims in the Mexico labor courts and took possession of various assets and records.  The Lain Faulkner Firm assimilated records through various sources and through the Receiver of the parent, Elcoteq SE.

18.     JW made demand on the following accounts receivable obligors pursuant to the records and schedules of Elcoteq:

| <u>**Account Receivable Obligor**</u> | <u>**Demand Amount**</u> |
|---|---|
| Technicolor U.S.A., Inc. | $14,359,930.89 |
| Funai Electric Co., Ltd. | $6,178,362.28 |
| Research in Motion Limited | $2,361,742.93 |
| P&F USA, Inc. | $431,469.10 |
| Plantronics, B.V. | $474,580.14 |
| Trend Smart America, Ltd. and TPV Technology Limited | <u>$16,151,780.43</u> |
| TOTAL | $39,957,865.77 |

8

19.     Each of the account receivable obligors contested the amount of the account receivable asserted by the Trustee, claimed damages for actions by Elcoteq, asserted set off and/or recoupment rights and asserted counter-claims for amounts alleged to be owed by Elcoteq.  The status of each of the accounts receivable is set forth below.  Many of the account receivable obligors filed proofs of claim in the case.

20.     **Technicolor U.S.A., Inc.:**  Technicolor U.S.A., Inc. ("Technicolor") filed a proof of claim in the amount of $16,146,775.80 ("Technicolor Proof of Claim") asserting claims for breach of contract and failure to perform, accounts receivable owed to Technicolor by Elcoteq, loss of business and consequential damages.  After informal discovery and extensive negotiations, a settlement was reached for payment of $7,125,000 by Technicolor, a release of claims by Technicolor and withdrawal of the Technicolor Proof of Claim.  The settlement has been approved by the Court and the settlement payment paid to the Trustee.

21.     **Funai Electric Co., Ltd.:**  Funai Electric Co., Ltd. ("Funai") filed a proof of claim in the amount of $1,123,046.12 ("Funai Proof of Claim") for damages and contested a number of invoices included in the Elcoteq Account asserted by Elcoteq against Funai in the amount of $6,178,362.28.  The parties engaged in informal discovery and after extensive negotiations a settlement was reached for payment of $5,600,000 by Funai, a release of claims by Funai and withdrawal of the Funai Proof of Claim.  The settlement has been approved by the Court and the settlement payment paid to the Trustee.

22.     **Research in Motion Limited:**  Research in Motion Limited ("RIM") filed a proof of claim in the amount of $443,035.08 ("RIM Proof of Claim") and contested the amount of the Elcoteq Account asserted by Elcoteq against RIM in the amount of $2,361,742.93.  Unable to reach a settlement, on July 20, 2013, the Trustee filed an adversary proceeding against RIM,

11424245v.1

Adv. No. 13-03152-BJH, seeking judgment for the account receivable amount and objected to the RIM Proof of Claim.  After discovery and extensive negotiations, a settlement was reached for a payment of $2,291,153.67, a release of claims by RIM and withdrawal of the RIM Proof of Claim.   A Settlement Agreement and Release was executed and a *Motion to Approve Compromise and Settlement of Claims Between Robert Milbank, Jr., Chapter 7 Trustee for Elcoteq Holding, Inc. and Elcoteq, Inc., and Research in Motion Limited n/k/a Blackberry Limited* [Docket No. 185] was filed on November 7, 2013.  The settlement was approved by the Court and the settlement payment paid to the Trustee.

23.   **Plantronics, B.V.:**   Plantronics, B.V. ("Plantronics") disputed the Elcoteq Account asserted by Elcoteq against Plantronics, Adv. No. 13-03186-BJH, and claimed various setoffs and credits.  Unable to reach a settlement, on August 30, 2013, the Trustee filed an adversary proceeding against Plantronics seeking judgment for the account receivable amount of $431,469.10.  After discovery and extensive negotiations, a settlement was reached for payment of $391,143.24 and a release of claims by Plantronics.  A Settlement Agreement and Release was executed and a *Motion to Approve Compromise and Settlement of Claims between Robert Milbank, Jr., Chapter 7 Trustee for Elcoteq Holding, Inc. and Elcoteq, Inc., and Plantronics, B..V.* [Docket No. 211] was filed on December 20, 2013.  The settlement was approved by the Court and the settlement payment paid to the Trustee.

24.   **P&F USA, Inc.:**   P&F USA, Inc. ("P&F") disputed the account receivable amount being asserted by Elcoteq and asserted claims for damages and setoffs.  Unable to reach a settlement, on August 30, 2013, the Trustee filed an adversary proceeding against P&F, Adv. No. 13-03185-BJH, seeking judgment for the account receivable amount.  P&F filed an answer and asserted rights of set off, recoupment and damages which exceeded the account receivable

11424245v.1

amount asserted against P&F.  After extensive discovery, the parties had extensive negotiation which resulted in a settlement for payment of $150,000.00 and a release of claims by P&F.  A Settlement Agreement and Release was executed and a *Motion to Approve Compromise and Settlement of Claims between Robert Milbank, Jr., Chapter 7 Trustee for Elcoteq Holding, Inc. and Elcoteq, Inc., and P&F USA, Inc.* [Docket No. 282] was filed on August 11, 2014.  The settlement was approved by the Court and the settlement payment paid to the Trustee.

25. **Trend Smart America, Ltd., TPV Technology Limited and Top Victory Investments Limited:**  TPV Technology Limited, a Hong Kong company ("TPV"), is the parent company of Trend Smart America, Ltd. ("Trend Smart").  Another subsidiary of TPV, Top Victory Investments Limited ("Top Victory") filed a proof of claim in the amount of $8,643,005.42 (the "Top Victory Proof of Claim").  Unable to reach a settlement, on August 30, 2013, the Trustee filed an adversary proceeding against Trend Smart, TPV and Top Victory, seeking judgment against Trend Smart and TPV for the Elcoteq Account in the amount of $16,151,780.43 and objecting to the Top Victory Proof of Claim.  Trend Smart filed a motion to dismiss and a motion to withdraw the reference, both of which were denied by the Court.

26. Trend Smart, TPV and Top Victory filed answers to the Complaint and asserted rights of set off, recoupment and damages which approximated the account receivable amount asserted against Trend Smart and TPV.  After significant discovery, the parties engaged in extensive negotiations which resulted in a settlement for payment of $15,287,000.00 and allowance of an unsecured claim to Top Victory in the amount of $3,000,000.00.  A Settlement Agreement and Release was executed by the parties and a *Motion to Approve Compromise and Settlement of Claims between Robert Milbank, Jr., Chapter 7 Trustee for Elcoteq Holding, Inc.*

11

*and Elcoteq, Inc., and P&F USA, Inc.* [Docket No. 283] was filed on August 11, 2014. The settlement was approved by the Court and the settlement payment was paid to the Trustee.

**B.**     **Summary of Collection Results**

27.     As a result of the efforts of JW in pursuing the collection of the Elcoteq Accounts, the table below reflects the settlement payments received by the Trustee:

| Account Receivable Obligor | Demand Amount | Settlement Amount | Proof of Claim Release Amount |
|---|---|---|---|
| Technicolor U.S.A., Inc. | $14,359,930.89 | $7,125,000.00 | $16,146,775.80 |
| Funai Electric Co., Ltd. | $6,178,362.28 | $5,600,000.00 | $1,123,046.12 |
| Research in Motion Limited | $2,361,742.93 | $2,291,153.67 | $443,035.08 |
| P&F USA, Inc. | $431,469.10 | $150,000.00 | - |
| Plantronics, B.V. | $474,580.14 | $391,143.24 | - |
| Trend Smart America, Ltd. and TPV Technology Limited | $16,151,780.43 | $15,287,000.00 | $5,643,005.42 |
| TOTAL | $39,957,865.77 | $30,844,296.91 | $23,355,862.42 |

28.     The services of JW have resulted in the collection of $30,844,296.91 by the Trustee and a reduction in proofs of claim filed in the estate of $23,355,862.42. JW believes this represents an outstanding result in a case where the Debtor had closed its doors, ceased operations, conducted its business in a foreign country, records and assets had been seized, and there was limited availability of persons with knowledge. Each of the account obligators contested liability, asserted significant defenses, damages and rights of setoff and recoupment.

11424245v.1

29.     In addition to the collection of approximately $31 million, the services of JW resulted in the release of $23 million in proofs of claim filed by various of the account receivable obligors.  The release of these claims will further enhance the recovery to unsecured creditors.

30.     To date, the Court has authorized the distribution from the collection of Elcoteq Accounts the amount of $12,836,004 to Danske, and the amount of $1,426,222 to the estate of Elcoteq, Inc.  Subject to the Court's determination of fees and expenses, the Trustee estimates an additional distribution to Danske in the approximate amount of $13,894,479 and to the estate of Elcoteq, Inc. the approximate amount of $1,543,831, resulting in a total distribution from the collection of Elcoteq Accounts to Danske in the amount of $26,730,483 and to the estate of Elcoteq, Inc. in the amount of $2,970,053.

31.     The total fees by JW in the pursuit of account receivables in this Application Period is $380,954.50.  By separate Application, JW seeks an upward adjustment or fee enhancement in the amount of $155,000.00 in addition to its hourly lodestar rate solely related to its services in the pursuit and collection of the Elcoteq Accounts.

## C.     General and Administrative

32.     During this Application Period, JW assisted the Trustee in responding to inquiries.  JW also prepared its Second Fee Application and presented the fee applications of all professionals and a status report to the Court.

## D.     TPV Preference Adversary

33.     The Trustee, through his general counsel, CHPS, filed an adversary proceeding against Suzhou TPV Technology Co. Ltd. d/b/a TPV Technology (Suzhou) Co. Ltd., TPV Technology Limited and Top Victory Investments Limited, No. 13-03227-BJH, seeking to avoid a transfer in the amount of $2,508,840.94 as a preference or fraudulent transfer ("TPV

11424245v.1

Preference Adversary"). Since there was overlap in parties and facts in this preference adversary and the account receivable adversary against Trend Smart, TPV and Top Victory, the Trustee determined that JW should be substituted as counsel in the TPV Preference Adversary. The Court entered an order approving such substitution on June 11, 2014. The Defendants in the TPV Preference Adversary have asserted numerous defenses and the parties are currently engaged in extensive discovery.

E.    **Philips Adversary**

34.    The Trustee, through his general counsel, CHPS, filed an adversary proceeding against Philips Lighting Electronics North America, a division of Philips Electronics North America Corporation, and Philips Electronics North America Corporation, No. 14-03007-BJH (collectively, "Philips"), seeking to recover damages in excess of $2,000,000.00 related to an auction and sale of assets of Elcoteq, Inc. in Juarez, Mexico. The Trustee requested that JW provide assistance to CHPS by providing information and documents regarding the claims asserted by the Trustee, the facts and responses asserted by Philips and responding to discovery requests. There has been ongoing discovery in the case and one JW attorney was deposed at the request of Philips.

**V.**
**REASONABLE AND NECESSARY**
**SERVICES RENDERED BY JW**

35.    The foregoing professional services rendered by JW during the Application Period were reasonable, necessary, and appropriate to the Trustee's fulfillment of his duties in this case. The professional services performed by JW benefitted and were in the best interests of the Trustee and the estate of the Debtors, and compensation for these services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved. The professional services were performed with expedition and in an efficient manner.

14

36.     As set forth in Exhibits "A" and "B" attached hereto and incorporated herein by reference, three partners, two associates and three paraprofessionals expended 905.8 hours during the Application Period rendering services on behalf of the Trustee.

37.     The fees charged by JW in these cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period.  The rates JW charges for the services rendered by its professionals and paraprofessionals in these Chapter 7 cases are the same rates JW charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based upon the customary compensation charged by comparably-skilled practitioners in comparable bankruptcy cases in a competitive national legal market.

## VI.
## ACTUAL AND NECESSARY
## EXPENSES INCURRED BY JW

38.     As set forth in Exhibit "C" attached hereto and incorporated herein by reference, JW incurred $19,817.29 in expenses on behalf of the Trustee in providing professional services during the Application Period (copies of applicable invoices are available upon request). These charges cover JW's direct operating costs, which costs are not incorporated into JW's hourly billing rates. JW does not make a profit on any reimbursable expenses requested herein. Only clients who actually use services of the types set forth in Exhibit "C" are separately charged for such services.  The total expenses in Exhibit "C" relates to the collection of accounts receivable.

39.     With regard to photocopy charges, JW only charges 20 cents per copy.  Some of the associated expenses in this category relate to pleadings that were required by the Federal Rules of Bankruptcy Procedure and/or the Local Bankruptcy Rules to be served on all parties-in-interest in this case. With regard to the on-line fee expenses incurred by JW related to PACER usage and the use of on-line legal research databases, these expenses relate to fees incurred by

15

JW in utilizing on-line databases that are necessary to access for purposes of obtaining updated

status information related to this case or related to necessary legal research.

**VII.**
**JW'S REQUESTED INTERIM COMPENSATION AND**
**REIMBURSEMENT SHOULD BE ALLOWED**

40.     Section 331 of the Bankruptcy Code and local rules provides for interim

compensation of professionals and incorporates the substantive standards of Section 330 of the

Bankruptcy Code to govern the Court's award of such compensation. *See* 11 U.S.C. § 331.

Section 330 of the Bankruptcy Code provides that a court may award a professional employed

under Section 327 of the Bankruptcy Code "reasonable compensation for actual necessary

services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an
> examiner, trustee under Chapter 11, or professional person, the court should
> consider the nature, the extent, and the value of such services, taking into account
> all relevant factors, including —
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or
> beneficial at the time at which the services was rendered toward
> the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount
> of time commensurate with the complexity, importance, and nature
> of the problem, issue, or task addressed;
>
> (e)     with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and
>
> (f)     whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases
> other than cases under this title.

11 U.S.C. § 330(a)(3).

16

41.     In the instant case, JW respectfully submits that the services for which it seeks compensation in this Third Fee Application were, at the time rendered, necessary for and beneficial to the Debtor. JW further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the bankruptcy estates.

42.     Also, pursuant to the decisions of the United States Court of Appeals for the Fifth Circuit in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977), and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), JW requests the Court to consider the following factors in determining the amount of reasonable compensation for JW's services in this matter:

(a)     Time and Labor Required: In total, JW rendered 1,016 hours of professional services to the Trustee during the Application Period. The professionals involved in rendering those services in this case have made a deliberate effort to avoid any unnecessary duplication of work and time expended, and reductions have been made where duplication or the appearance of duplication was unavoidable. Where less sophisticated issues were involved, JW utilized the talents of less experienced professionals in order to reduce the overall fees in this matter without sacrificing quality.

(b)     Novelty and Difficulty of the Questions Presented: JW's representation of the Trustee has involved numerous international law issues regarding Mexico and Brazil laws regarding labor laws and claims, tax issues, import/export and customs issues which affected the assets of Elcoteq located in such jurisdictions. In addition, the case involved international law issues regarding the Luxembourg Receiver and claims involving Danske. Several of the accounts receivable were due from international companies located outside the United States and required JW to deal with international legal issues. JW's representation also involved legal and factual questions requiring a high degree of bankruptcy expertise.

(c)     Skill Requisite to Perform the Legal Services Properly: Due to the nature of the complex legal issues presented in this case, a high degree of legal skill related to international law, bankruptcy law and other issues was required by JW in representing the Trustee. JW's attorneys have been used effectively and efficiently to meet

11424245v.1

the requirements of the tasks assigned, and have provided substantial benefit to the Debtors' bankruptcy estates.

(d)     <u>Preclusion of Other Employment</u>: Performance of JW's responsibilities did not preclude it from other employment.

(e)     <u>Customary Fee</u>: The hourly rates charged by JW for the complex services performed in these proceedings are comparable to or less than other similarly experienced bankruptcy and litigation practitioners in Texas involved in cases of smaller size and complexity. The rates charged by JW are in the range of the typical rates in Chapter 7 cases in the Northern District of Texas.

(f)     <u>Whether the Fee is Fixed or Contingent</u>: The payments of fees in these cases for services by JW were contingent because the tangible assets in the estate were located in foreign jurisdictions and potentially subject to claims and rights asserted in the foreign jurisdictions and the value of the assets on a sale basis was difficult to ascertain.  Further, the value and collection of the accounts receivable were unknown and no funds were available to pursue such collection.  In addition, liens were being asserted against all of the assets of the Debtors.  Accordingly, JW's fees may be considered contingent, although the fee is computed on a fixed hourly basis for each professional involved.

(g)     <u>Time Limitations</u>: During this case there have been instances in which it was necessary for JW to render services on very short notice and under limited time constraints.

(h)     <u>Amounts Involved and Results Obtained</u>: As previously discussed, based upon the amounts involved and the results JW obtained (as set forth herein), the fees and expenses requested herein are reasonable and appropriate and should be approved for interim compensation. The pursuit of the Elcoteq Accounts has resulted in the collection of approximately $31,000,000.00, which is an exceptional result given the facts and circumstances of the case and will result in a dividend to the creditors in a case that could have been viewed as a no asset case.   In addition, there was a withdrawal and release of proofs of claims in the amount of $23,355,861.

(i)     <u>The Experience, Reputation, and Ability of Applicant</u>: JW's attorneys have represented all types of entities in complex liquidation and reorganization cases throughout the United States and have the combined experience, reputation, skill, and ability to provide necessary services to the Debtors. The biography of the JW attorneys assisting on this matter is attached as <u>Exhibit "E."</u>

18

(j)     Undesirability of the Case: This case is not an undesirable case
except there were no funds in the estate to insure payment of fees
and expenses.

(k)     The Nature and Length of Professional Relationship with the
Client: Applicant began acting as counsel to the Trustee after
appointment as Chapter 7 Trustee.

**F.     Awards in Similar Cases**

43.     The compensation and expenses sought in this case are not excessive and are

commensurate with the compensation sought and ordered in similar cases under the Bankruptcy

Code and in the Northern District of Texas.

44.     In sum, the services rendered by JW were necessary and beneficial to the Trustee

and the bankruptcy estates, and were consistently performed in a timely manner commensurate

with the complexity, importance, and nature of the issues involved, and approval of the

compensation sought herein is warranted.

**VIII.**
**REQUEST FOR RELIEF**

WHEREFORE, JW respectfully requests entry of an order (i) approving and allowing

interim compensation to JW for the period from November 1, 2013 through and including

September 30, 2014 in the amount of $486,381.00 in fees for services rendered and $19,817.29

in reimbursement of expenses incurred during the Application Period for a total award of

$506,198.29, (ii) approving the amount of $19,424.50 in fees from the Second Fee Application

reserved for future consideration by the Court, (iii) approve payment of $380,954.50 in fees and

$19,817.29 in expenses related to collection of accounts receivable from the account receivable

collections held by the Trustee, and (iv) that the Trustee be authorized to pay to JW the approved

compensation, and granting such other and further relief to which JW may justly be entitled.

11424245v.1

Dated:  November 6, 2014.

Respectfully submitted,

JACKSON WALKER L.L.P.


By:  */s/ Kenneth Stohner, Jr.*
      Kenneth Stohner, Jr.
      State Bar No. 19263700

JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000
(214) 661-5822 – Fax

*COUNSEL FOR ROBERT MILBANK, JR.,
CHAPTER 7 TRUSTEE*

## CERTIFICATE OF COMPLIANCE

This is to certify that I have read the foregoing Third Interim Application, that to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and reimbursement sought is in conformity with the Court's Guidelines for Compensation and Expense Reimbursement of Professionals, and the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by Jackson Walker L.L.P. and generally accepted by its clients.


*/s/ Kenneth Stohner, Jr.*
Kenneth Stohner, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of November, 2014, a true and correct copy of the foregoing *Third Interim Application of Jackson Walker L.L.P. for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Expenses Incurred as Special Counsel for Robert Milbank, Jr., Chapter 7 Trustee, November 1, 2013 Through September 30, 2014* was served by electronic service on all parties requesting electronic notice.


*/s/ Kenneth Stohner, Jr.*
Kenneth Stohner, Jr.

11424245v.1